UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PETER LINDNER,

Plaintiff,

-against-

NEWELL, et al.,

Defendant.

Case No. 11 Civ. 8365 (LAP)

**MEMORANDUM OF LAW IN SUPPORT OF INTERNATIONAL BUSINESS MACHINES CORPORATION'S MOTION TO QUASH PETER LINDNER'S SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION AND TO IMPOSE SANCTIONS**

Non-party International Business Machines Corporation ("IBM") respectfully submits the following memorandum of law in support of its motion to quash the subpoena to produce documents, information, or objects or to permit inspection of premises in a civil action served by plaintiff Peter Lindner (the "Subpoena") and to impose sanctions on Lindner. The Subpoena is dated December 22, 2011 and purports to require responsive materials to be produced by December 27, 2011.

**<u>Preliminary Statement</u>**

Lindner is a disgruntled former IBM employee who has been engaged in a longstanding campaign of harassment directed at IBM through (among other things) frivolous litigation, shareholder demands and complaints to the Securities and Exchange Commission ("SEC"). He has already been cited by Judge Richard S. Sullivan of this Court for "repeated and ongoing abuse of the litigation process" and his abusive conduct continues unabated. The underlying lawsuit here asserts claims for a supposed "assault"

by Court personnel that occurred in connection with Lindner's prior lawsuit against IBM. Even if those claims had merit, the Subpoena at issue here has nothing to do with them.

Rather, the Subpoena—which was dated and served on December 22 and purported to require compliance five days (including a Federal holiday) later on December 27—seeks a DVD and transcript of an IBM shareholders' meeting plus a sworn certification by the Chief Executive Officer of IBM (Sam Palmisano) as to the accuracy of the transcript. Lindner attended the meeting and attempted to use it to air his perceived grievances against IBM and, since that time, has inundated both IBM and the SEC with letters, emails and telephone calls containing various complaints and requests relating to the meeting.

Because the Subpoena seeks materials that are entirely irrelevant to the underlying lawsuit and was served for purposes of harassment, it should be quashed and appropriate sanctions (including attorneys' fees) should be imposed.

**Factual Background**

On November 17, Lindner filed the underlying *pro se* action against several Court Security Officers, United States Marshals and the U.S. Attorney for the Southern District of New York alleging that Lindner "was assaulted by CSO Newel" and that "this was covered up by the US Marshal in concert with the CSO and their employer". (Compl. at 5, III.C.) As relief, Lindner requests, *inter alia*, that "each of the Defendants . . . pay $100,000 for their part in the conspiracy", that the "CSO's who acted in concert to cover up [the alleged assault] . . . be sanctioned for $1 millions [sic] dollars each" and that "a permanent injunction" be issued "that each such complaint be taken seriously, and reported via a list to a special prosecutor". (*Id.* at 6, V.) Although Lindner

has not yet paid the requisite court filing fee or moved to proceed *in forma pauperis*, Judge Preska has temporarily exercised jurisdiction over this matter. (*See* 12/7/11 Order.)

According to Lindner's complaint, the alleged assault occurred during proceedings concerning a prior legal dispute between Lindner and IBM. *See* Compl. at 5, II.B. Lindner was employed by IBM from March 1999 until August 2003, when he was terminated for cause. *See Lindner v. IBM*, No. 06 Civ. 4715, 2010 WL 308725, at *1 (S.D.N.Y. Jan. 21, 2010). Several years later, Lindner filed a civil action against IBM and two of its employees alleging that defendants had violated Title VII, the New York State Human Rights Law and the New York City Human Rights Law by telling two prospective employers, in alleged retaliation for Lindner engaging in protected conduct, that Lindner was unqualified. *See* Second Am. Compl. at 1, *Lindner v. IBM*, No. 06 Civ. 4715 (S.D.N.Y. July 15, 2008). Judge Sullivan granted summary judgment for defendants and closed the case. *See Lindner*, 2010 WL 308725. The Second Circuit denied Lindner's motion for leave to proceed *in forma pauperis* and dismissed his appeal because it "lack[ed] an arguable basis in law or fact". Order at 1, *Lindner v. IBM*, No. 10 Civ. 653 (2d Cir. Sept. 2, 2010).

Throughout those proceedings, Lindner used the litigation to seek "relief . . . collateral to [that] case", including filing seven motions to sanction defense counsel that were all denied by the Court. Order at 1, *Lindner v. IBM*, No. 06 Civ. 4715 (S.D.N.Y. Sept. 18, 2009). Accordingly, in light of Lindner's "repeated and ongoing abuse of the litigation process", Judge Sullivan ordered that Lindner "make no motions and . . . submit no documents to the Pro Se Office without first obtaining written permission from this Court" and that all communications "shall not exceed 200 words".

*Id.* at 1-2. Despite these admonishments, Lindner continued a pattern of harassment, comparing Judge Sullivan "to 'disgraced President Nixon' and the Nazi collaborators of Vichy France" and sending a letter to the Pro Se office "suggesting that [Judge Sullivan] should be impeached for being corrupt and for receiving bribes from Defendant IBM". Order at 1, *Lindner v. IBM*, No. 06 Civ. 4715 (S.D.N.Y. Oct. 7, 2009). Judge Sullivan ordered Lindner to show cause why he should not be sanctioned for these actions. *Id.* Although Judge Sullivan ultimately determined not to sanction Lindner "[i]n light of the fact that the merits of [the] case" were resolved on summary judgment, *Lindner*, 2010 WL 308725, at *5, Judge Sullivan noted again that Lindner's only submissions in opposition to defendants' motion were three documents that "were largely tangential to the merits of the case . . . , focusing instead on [Lindner's] several complaints about the conduct of both the Court and Defendants during the course of this litigation". *Id.* at *2. And the papers already filed by Lindner in this action reveal that he intends to rehash these complaints here. Lindner has attached to the Complaint an affidavit referencing Judge Sullivan's Order to Show Cause, Aff. to Compl. ¶ 40, and suggesting that Judge Sullivan may have dismissed Lindner's claims "at IBM's bidding", *id.* ¶ 53.

In addition to pursuing frivolous litigation, Lindner has attempted to use shareholder proposals, attendance at IBM shareholder meetings and complaints directed to the SEC (plus dozens of related emails, letters and phone calls) to further air his perceived grievances. It would be unduly burdensome to catalog all of this activity but we do refer the Court to the December 13, 2011, letter from IBM to the SEC dealing with Lindner's most recent attempt to put forward a shareholder proposal; this letter describes much of the relevant history. (*See* Decl. of Peter T. Barbur ("Barbur Decl.") Ex. S.)

Perhaps most pertinently, Lindner attempted to submit a shareholder proposal in connection with the 2011 IBM annual shareholders' meeting that related to the preservation and production of electronically stored information.[1] (*See id.* at 2-3.) Lindner also attended that meeting in April 2011 in St. Louis and raised related concerns as part of the public question and answer process. (*See id.* at 3; Barbur Decl. Exs. A-B.) Since that time, Lindner has repeatedly sought to obtain information from IBM—including a certified transcript of the proceedings—relating to the April shareholders' meeting. He has emailed the SEC and IBM's outside counsel on numerous occasions (*see, e.g.*, Barbur Decl. Exs. A-E, G, J, & L-O), placed several harassing calls to outside counsel (*see, e.g.*, Barbur Decl. Exs. H-I), and continued to contact IBM employees despite IBM's request that Lindner direct all communications to outside counsel (*see, e.g.*, Barbur Decl. Exs. F & K).

The Subpoena served by Lindner on December 22, 2011 in this action demands that IBM produce the same materials—"[an] unedited DVD of April 2011 IBM Shareholders' Meeting" and "sworn as true by CEO Sam Palmisano the transcript of the entire, unedited meeting"—that Lindner has been seeking to obtain by other means (and that indeed are the subject of Lindner's most recent shareholder proposal sent to IBM in December of this year). (*See* Barbur Decl. Ex. P.) Lindner has confirmed by email and phone that the Subpoena is a continuation of his past efforts. On December 22, 2011, he left a message for Andrew Bonzani, an IBM employee, during which he stated,

[1] Lindner already raised the same electronic discovery issues when he filed a motion to compel additional discovery responses in *Lindner v. IBM*, No. 06 Civ. 4751. Magistrate Judge Easton denied that motion, *see* Order at ¶¶ 10-13, *Lindner v. IBM,* No. 06 Civ. 4751 (S.D.N.Y. July 23, 2009), and Judge Sullivan affirmed the Magistrate's Order, *see* Order at 2, *Lindner v. IBM*, No. 06 Civ. 4751 (S.D.N.Y. Aug. 4, 2009).

"[Providing the subpoenaed materials] will allow us to check whether [Mr. Palmisano] misled shareholders and [uh] I have been asking for that since May, I've tried to ask you politely, I've tried to ask by the SEC, hopefully you'll obey a subpoena". (Barbur Decl. Ex. Q.) And, on December 23, 2011, after serving the subpoena, Lindner emailed the SEC, IBM employees and outside counsel, stating that Lindner had served an "SDNY Subpoena . . . for the IBM April 2011 Shareholder Meeting in St. Louis, MO on DVD with a signed transcript sworn by CEO Sam Palmisano" and that he had been "ask[ing] in writing for [these materials] for a half year". (Barbur Decl. Ex. R.) The Subpoena purports to require that these materials to be produced by December 27, 2011. (*See* Barbur Decl. Ex. P.)

**Argument**

Under Federal Rule of Civil Procedure 45(c)(3)(A), "the issuing court must quash or modify a subpoena that . . . subjects a person to undue burden". "Whether a subpoena imposes an undue burden depends upon such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed". *Sanofi-Synthelabo v. Apotex Inc.*, No. 02 Civ. 2255, 2009 WL 5247497, at *3 (S.D.N.Y. Dec. 30, 2009) (citing *Griffith v. U.S.*, No. M8-85, 2007 WL 1222586, at *2 (S.D.N.Y. Apr. 25, 2007)). When discovery sought is entirely irrelevant to the merits of the underlying action, however, there is no need to inquire into the other factors and the subpoena should be quashed. *See* Fed. R. Civ. Pro. 26(b)(1) (limiting discovery to "any nonprivileged matter that is relevant to any party's claim or defense"); *Kirschner v. Klemons*, No. 99 Civ. 4828, 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005) ("A subpoena that pursues material with little apparent or likely relevance to the subject

matter . . . is likely to be quashed as unreasonable even where the burden of compliance would not be onerous." (internal quotation marks and citation omitted)); *Sanofi-Synthelabo*, 2009 WL 5247497, at *3; *Mayes v. Local 106, Int'l Union of Operating Eng'rs*, No. 86 Civ. 41, 1992 WL 335964, at *3-5 (N.D.N.Y. Nov. 12, 1992); *cf. Tottenham v. Trans World Gaming Corp.*, No. 00 Civ. 7647, 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002) ("Discovery . . . is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support. . . . Discovery requests cannot be based on pure speculation or conjecture.").

Because Lindner is seeking materials that are entirely irrelevant to the subject matter of the underlying action, the subpoena must be quashed. This is a civil action alleging assault by several court employees in a federal courthouse in New York. IBM is not a party to this suit. The demanded materials relate to an IBM shareholders' meeting in St. Louis, Missouri and more tangentially to an employment discrimination action that was dismissed almost two years ago. The transcript and DVD of this shareholders' meeting are not only entirely irrelevant to the merits of this case but have plainly been requested for the improper purpose of continuing Lindner's campaign of harassment directed at IBM. Notably, in a recent voicemail left for an IBM lawyer, Lindner stated that he is seeking these materials because they "will allow us to check whether [IBM's CEO] misled shareholders". (Barbur Decl. Ex. Q.) Likewise, in an attachment to the Subpoena, Lindner asserts that this information should be produced "in the spirit of the SEC laws of the 1930's". (Barbur Decl. Ex. P.) Lindner has also contacted the SEC, which he says is "stonewalling" him, in connection with his request for these materials (including with respect to the Subpoena served on December 22).

(*Id.*) The SEC has not requested that IBM produce these materials and Lindner should not be permitted to abuse this Court's subpoena power in order to secure them.[2]

Moreover, even if these materials were relevant to the underlying action, in New York, where IBM is incorporated, in order to review corporate books and records, a shareholder must plead and prove that he is acting in good faith, that the inspection is desired for a proper purpose and that he has complied with all statutory prerequisites for gaining such access. *See Crane Co. v. Anaconda Co.*, 39 N.Y.2d 14, 18-20 (N.Y. 1976); *Dwyer v. DiNardo & Metschl, P.C.*, 838 N.Y.S.2d 745, 746-47 (N.Y. App. Div. 2007); N.Y. Bus. Corp. Law § 624. Lindner plainly has not done so in this case.

Federal Rule of Civil Procedure 45(c)(1) additionally imposes a duty on a party serving a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena" and authorizes courts to "impose an appropriate sanction which may include lost earnings and reasonable attorneys' fees on a party or attorney who fails to comply". *See also Molefi v. Oppenheimer Trust*, No. 03 Civ. 5631, 2007 WL 538547, at *2 (E.D.N.Y. Feb. 15, 2007) (imposing sanctions and awarding attorney's fees under Rule 45, and noting that Rule 45's "sanctions provision was intended primarily to protect a 'non-party witness as a result of a misuse of the subpoena'" (quoting Fed. R. Civ. P. 45(c)(1) Advisory Committee Note (1991)) (italics

[2] Lindner has also failed to pay the requisite filing fee or apply to proceed *in forma pauperis*. (*See* 12/7/11 Order.) The Court informed Lindner of this deficiency on December 7, 2011 and that the action would be dismissed if this action was not completed within thirty (30) days (*see id.* (citing 28 U.S.C. §§ 1915)), and there is no indication that Lindner has complied with this Order. Accordingly, a summons has not issued and the matter will be reassigned to a new judge if and when the filing fee is paid. (*Id.*) Until this action is taken, it is premature for Lindner to use this Court's subpoena power in any capacity, let alone in the frivolous manner Lindner is attempting here.

omitted)). "[A] Court determining whether sanctions are appropriate under Rule 45(c)(1) should examine whether the subpoena served an improper purpose and whether it was unduly burdensome". *Kenney, Becker LLP v. Kenney*, No. 06 Civ. 2975, 2008 WL 681452, at *2 (S.D.N.Y. Mar. 10, 2008) (collecting cases). Typically, if a subpoena is served for an improper purpose, however, almost anything done in response to that subpoena or to defend against it, including filing a motion to quash, is considered unduly burdensome. *See Molefi*, 2007 WL 538547, at *3 ("'When a subpoena should not have been issued, literally everything done in response to it constitutes undue burden or expense within the meaning of Civil Rule 45(c)(1).'" (quoting *Builders Ass'n of Greater Chicago v. City of Chicago*, No. 96 Civ. 1122, 2002 WL 1008455, at *4 (N.D. Ill. May 13, 2002))). "The Court also has the 'inherent' power to impose attorney's fees 'when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . [or] if a court finds that a fraud has been practiced upon it'". *Kenney*, 2008 WL 681452, at *2 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)).

Lindner, as discussed, has indicated that his real purpose in seeking the subpoenaed material is to gather support for alleged securities violations by IBM that are entirely unrelated to the underlying subject matter of this lawsuit and clearly not discoverable. *See Molefi*, 2007 WL 538547, at *4 (imposing sanctions because the subpoena was retaliatory); *Kenney*, 2008 WL 681452, at *3 (imposing sanctions because the subpoena sought documents that had already been deemed nondiscoverable); *American Int'l Life Ins. Co. of New York v. Vasquez*, No. 02 Civ. 241, 2003 WL 548736, at *3 (S.D.N.Y. Feb. 25, 2003) (imposing sanctions because subpoena sought material that was clearly privileged). Moreover, Lindner has a history of burdening IBM with

baseless motions and of using the federal court system to seek collateral relief. *See Kenney*, 2008 WL 681452, at *3 (taking into account plaintiff's history of "vexatious conduct" in imposing sanctions). Although Judge Sullivan admonished Lindner for this behavior in a prior case, the service of this subpoena demonstrates that Lindner has not been discouraged by those admonishments. IBM should not be required to continue investing time and resources to respond to Lindner's frivolous demands and Lindner should receive a clear message that the federal court system is not an appropriate forum to settle personal vendettas. Accordingly, we respectfully request that the Court impose sanctions, including reasonable attorneys' fees, on Lindner.

**Conclusion**

For the reasons set forth above, non-party IBM respectfully requests that the Subpoena be quashed and Lindner be required to pay the costs of this motion, including reasonable attorneys' fees.

December 27, 2011

CRAVATH, SWAINE & MOORE LLP

by /s/ Peter T. Barbur
Peter T. Barbur
*PBarbur@Cravath.com*
Member of the Firm

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
(212) 474-1000

*Attorneys for Non-Party International Business Machines Corporation.*