

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PETER LINDNER

                         Plaintiff

-against-

COURT SECURITY OFFICER (CSO) NEWELL, CSO MUSCHITIELLO, CSO JOHN DOE #1, CSO JOHN DOE #2, 2ND CIRCUIT COURT OF APPEALS CLERK MARGARET LAIN, ASSISTANT US MARSHAL (USM) JAMES HOWARD, USM BRIAN MURPHY, USM BETTY ANN PASCARELLA, WITNESS SECURITY S. JONES, CONGRESSIONAL AFFAIRS CHIEF D. DISRUD, US ATTORNEY PREET BHARARA, USM JOSEPH R. GUCCIONE,

                         Defendants

Civil Action No. 11 cv 08365 (AJN-MHD)

MOTION AND MEMO OF LAW ON MOTION FOR ESI AND ALLEGED BAD FAITH NEGOTIATION BY DEFENDANTS AKAL, CSO NEWELL, CSO MUSCHITIELLO AND THEIR LAWYERS

Friday, July 20, 2012 8:07 AM
(to be Filed by CM/ECF[1])

The Honorable US Magistrate Judge Michael H. Dolinger
Courtroom: 17D
Chambers Phone: 212-805-0204
Deputy Phone: 212-805-0098
Fax: 212-805-7928

To the Honorable US Magistrate Judge Dolinger:

I hereby allege that Defendants' 2 Littler lawyers (Ms. J. Woltz and her managing Littler Partner whose name I can't find, but whose vacation and busy schedule were the given reason for the 2 delays requested by Defendants) and the 3 Defendants (Akal, and the 2 CSO's) have separately and jointly engaged in bad faith negotiation[2], whilst I seek to protect my Constitutional right for due process, freedom from fear, alleged bribery / intimidation / subornation of perjury of a US Confidential Informant [hearsay, awaiting confirmation by discovery from the CI, videotapes, and the 2 unknown defendants who are not yet listed in this instant case 11 cv 8365 *Lindner v. CSO Newell, et al.*], and tampering with witnesses under 18 USC § 1512(b)(3).

I hereby wish to enforce a prior agreement by Defendants' lawyer Ms. Jennie Woltz, Esq., who promised to provide ESI (Electronically Stored Information) as a condition for my allowing one postponement of her initial response. Your Honor memorialized this via an ENDORSED ORDER in Document 31 Filed 06/14/12, where my concurrence read:

---

[1] I ask the Court's indulgence in filing via fax, rather than CM/ECF in which I was trained last week. However, this week I have started a new job, and I cannot risk being late after not working for 17 months (perhaps due in part to the actions of IBM). I do not seek to blame IBM in this motion, but merely to point out that in this troubled economy / recession, it is difficult to find a job, and having found one, to keep it. I originally had a motion, and a memo of law, and also ask The Court's indulgence in combining them into this one document.

[2] As stated later, this FRCP 11 motion does not apply to negotiations with the Honorable US Attorney Christopher Harwood, who sought no time delay, since as a US Government defendant was automatically given extra weeks.

1

"I note that I have spoken / emailed and received concurrences with both defendants' lawyers of Ms. Woltz, Esq. of Littler Mendelson and Christopher B. Harwood, Assistant US Attorney (AUSA) on both conforming to FRCP [e.g. 26 on ESI]"
/s/ Peter Lindner  Thursday, June 14, 2012 3pm"

" ENDORSED ORDER

...

[/s/] USMJ  6/14/12"

However, I regret to inform Your Honor that Ms. Woltz now refuses to honor that agreement, although she agreed[3] to a phone conference with me on Monday, July 23, 2012 at 6pm to discuss it. Ms. Woltz said that what she meant was that she would give ESI during discovery, and I pointed out that FRCP 26 said ESI is required now, since " a party must, without awaiting a discovery request... a copy ... of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control ".

"RULE 26. DUTY TO DISCLOSE; GENERAL PROVISIONS GOVERNING DISCOVERY

(a) REQUIRED DISCLOSURES.

(1) Initial Disclosure.

(A) In General. Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:

(i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

(ii) a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses..."
http://www.law.cornell.edu/rules/frcp/rule_26

Ms. Woltz countered that no Court has ESI this early, prior to a ruling on the motion to dismiss. I asked that if I found a precedent for that would she then consent, Ms. Woltz then refused. I feel this is additional evidence of negotiating in "bad faith", which is the very thing FRCP 11 was designed, and then re-designed to be more "effective in deterring abuses ".

Specifically, Ms. Woltz went against her express words, and the written summary of them which was so ORDERed by Your Honor on June 14, 2012. I allege that Ms. Woltz and her 3 defendants exhibited

---

[3] I don't want to go overboard with bad faith allegations, but Ms. Woltz said she had to curtail talking to me due to prior commitments, even though I offered to talk later that evening Thu, July 19, or even generously on "Friday, Saturday, Sunday, Monday, Tuesday". Ms. Woltz chose Monday at 6pm July 23. I note that subsequent to that conversation, Ms. Woltz found time to confer unscheduled with US Attorney Christopher Harwood, who emailed me at 7/19/2012 10:03 PM, some 3 hours later.

2

a lack of good faith by agreeing to provide ESI, which now they have no intention of providing. This violates FRCP 11(b)(3) and (b)(4):

" **RULE 11. SIGNING PLEADINGS, MOTIONS, AND OTHER PAPERS; REPRESENTATIONS TO THE COURT; SANCTIONS**

[...]

(b) REPRESENTATIONS TO THE COURT. By presenting to the court a pleading, written motion, or other paper— whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

[...]

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information."

http://www.law.cornell.edu/rules/frcp/rule_11

The 1983 Amendment by the Advisory Committee on Rules notes: " The new language [in FRCP 11] is intended to reduce the **reluctance** of courts to impose sanctions, see Moore, Federal Practice 7.05, at 1547, by emphasizing the responsibilities of the attorney and reenforcing those obligations by the imposition of sanctions." [**emphasis** added] I hereby ask for sanctions in the amount of $1,000 per day upon each of the 3 defendants Akal, CSO Newell, and CSO Muschitiello, and $10,000 per day upon Ms. Woltz and $10,000 to her supervising partner who asked for the delay (I believe) so he could be on vacation, to be paid out of their own pockets without reimbursement by any other party for up to one week, and thereafter that these defendants be found in Contempt of Court. FRCP 11's Advisory Committee in 1983 noted that such fines may be imposed upon the lawyers "personally ... The amended rule should eliminate any doubt as to the propriety of assessing sanctions against the attorney, ..., the party, or both ". This will encourage CSO Newell and CSO Muschitiello to find those documents which they might otherwise neglect to turn over.

" courts have claimed the power to impose sanctions on an attorney personally, either by imposing costs or employing the contempt technique. See 5 Wright & Miller, Federal Practice and Procedure: Civil §1334 (1969); 2A Moore, Federal Practice 11.02, at 2104 n.8. This power has been used infrequently. The amended rule should eliminate any doubt as to the propriety of assessing sanctions against the attorney.

Even though it is the attorney whose signature violates the rule, it may be appropriate under the circumstances of the case to impose a sanction on the client. See Browning Debenture Holders' Committee v. DASA Corp., supra. This modification brings Rule 11 in line with practice under Rule 37, which allows sanctions for abuses during discovery to be imposed upon the party, the attorney, or both. "
[ibid.]

This is for assurances of providing ESI in return for a delay of several days / weeks, and then cavalierly denying any such quid pro quo, or even noting on the record of ORDER #31 for clarification that the ESI would not come until Discovery began (if I understand Ms. Woltz's conversation with me tonight at 6:30pm, Thursday, July 19, 2012). It is saddening to see that some 30 years ago, the

3

Committee reflected that "Experience shows that in practice Rule 11 has not been effective in deterring abuses."

> "Experience shows that in practice Rule 11 has not been effective in deterring abuses. See 6 Wright & Miller, Federal Practice and Procedure: Civil §1334 (1971). There has been considerable confusion as to (1) the circumstances that should trigger striking a pleading or motion or taking disciplinary action, (2) the standard of conduct expected of attorneys who sign pleadings and motions, and (3) the range of available and appropriate sanctions. See Rodes, Ripple & Mooney, Sanctions Imposable for Violations of the Federal Rules of Civil Procedure 64–65, Federal Judicial Center (1981). The new language is intended to reduce the reluctance of courts to impose sanctions, see Moore, Federal Practice 7.05, at 1547, by emphasizing the responsibilities of the attorney and reenforcing those obligations by the imposition of sanctions.
>
> The amended rule attempts to deal with the problem by building upon and expanding the equitable doctrine permitting the court to award expenses, including attorney's fees, to a litigant whose opponent acts in bad faith in instituting or conducting litigation. See, e.g., Roadway Express, Inc. v. Piper, 447 U.S. 752, (1980); Hall v. Cole, 412 U.S. 1, 5 (1973). Greater attention by the district courts to pleading and motion abuses and the imposition of sanctions when appropriate, should discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses."
> http://www.law.cornell.edu/rules/frcp/rule_11

The 1983 Advisory Committee notes that "shall impose" is used for motion abuses:

> "The word "sanctions" in the caption, for example, stresses a deterrent orientation in dealing with improper pleadings, motions or other papers. This corresponds to the approach in imposing sanctions for discovery abuses. See National Hockey League v. Metropolitan Hockey Club, 427 U.S. 639 (1976) (per curiam). And the words "shall impose" in the last sentence focus the court's attention on the need to impose sanctions for pleading and motion abuses."

I feel this is a separate matter from US Attorney Christopher Harwood for the US Government defendants, since their Motions were entitled to additional [30 days'] time, and were not a subject for negotiation with me.

It is not unreasonable to request ESI, yet my limited experience in SDNY has proven otherwise; eg. for IBM in 06cv4751 *Lindner v IBM, et al.* IBM wrote the Court that no relevant email was not produced [cite omitted], and when I produced an email from IBM to me that proved IBM had communicated with my potential employer, and requested IBM to inform the Judge of IBM's overlooking of that email, produce that email, verify that my email was legitimate (not forged), and explain how that email was overlooked, IBM refused to take any action. If IBM[4] can pretend that ESI is not available despite evidence to the contrary, then all hope is lost for compliance with ESI in FRCP 26 within SDNY. This is also relevant, since IBM's case was the reason I appealed to the US Second Circuit Court of Appeals, where during going there, CSO Newell hit me on the face with his name plate.

---

[4] IBM is the largest computer firm in the USA, and a leader in the industry, and specialist in eDiscovery, aside from their in-house use of email and computer files for some decades, which I can personally attest to when I worked at IBM in 1973, almost a half century ago, if you include their work prior to my reporting at IBM NYC as an employee.

Ms. Woltz told me last night that her / their Motion to Dismiss says that even if the facts were true, there would be no violation. (She hurriedly added that she was not conceding those facts.)

Well, if the "the facts were true," then not only did CSO Newell assault me in the 500 Pearl Street, NYC Courthouse, but then CSO Newell affirmatively/actively lied about it to the US Marshal (a criminal offense, and a sign of a cover up), and CSO Muschitiello passively did not report that lie that CSO Muschitiello both witnessed with his eyes and later witnessed with his eyes and ears as CSO Newell apologized for hitting me in the face with the badge. The purpose of the Courts is to preserve order, and allow for the peaceful resolution of civil matters, without resorting to physical acts of intimidation (let alone verbal intimidation – e.g. Governor Wallace standing[5] in the school house door and reading his proclamation barring the students' entry into the University of Alabama.)

---

[5] I wish to show that actual **physical touching** is not needed to intimidate, to halt persons seeking to move freely. This moment is recounted (proudly? contritely?) in Alabama archives with this introduction:

" Governor George C. Wallace's School House Door Speech

On June 11, 1963, Alabama's Governor George Wallace came to national prominence when he kept a campaign pledge to stand in the schoolhouse door to block integration of Alabama public schools. Governor Wallace read this proclamation when he first stood in the door-way to block the attempt of two black students, Vivian Malone and James Hood, to register at the University of Alabama. President John F. Kennedy federalized the Alabama National Guard, and ordered its units to the university campus. Wallace then stepped aside and returned to Montgomery allowing the students to enter. "

followed by the proclamation, which began in part:

"The unwelcomed, unwanted, unwarranted and force-induced intrusion upon the campus of the University of Alabama today of the might of the Central Government offers frightful example of the oppression of the rights, privileges and sovereignty of this State by officers of the Federal Government. This intrusion results solely from force, or threat of force, undignified by any reasonable application of the principle of law, reason and justice. It is important that the people of this State and nation understand that this action is in violation of rights reserved to the State by the Constitution of the United States and the Constitution of the State of Alabama. While some few may applaud these acts, millions of Americans will gaze in sorrow upon the situation existing at this great institution of learning. "
[Alabama Department of Archives & History]
http://www.archives.state.al.us/govs_list/schooldoor.html

Note: this was 5 months after Gov. Wallace's inaugural speech of January 14, 1963 that contains the infamous line "I draw the line in the dust and toss the gauntlet before the feet of tyranny . . . and I say . . . segregation today . . . segregation tomorrow . . . segregation forever. "

I have (I believe and hope) a stronger case to enter the Courthouse without intimidation than the black students did to enter a State University. I do not think that I am elevating my cause above the noble ascent of the black people for 100 years from slavery to citizen, but I was entering the seat of one of the 3 branches of Government (the Judiciary) when the alleged intimidation of me occurred. In fact, the US Government / US Supreme Court in *Tennessee v. Lane, Jones, et al.* (02-1667)

"The inability of two Tennessee paraplegics to gain access to a county courthouse has put them at the center of a legal dispute that has reached the U.S. Supreme Court."
http://articles.cnn.com/2004-01-12/justice/scotus.wheelchair.access_1_wheelchair-access-disability-polk-county-courthouse?_s=PM:LAW

This was resolved 5 to 4 by SCOTUS in applying federal law to a **State** courthouse *Tennessee v. Lane* (02-1667) 541 U.S. 509 (2004) 315 F.3d 680, affirmed. I believe that unhindered access to a federal Courthouse is clearly a more basic right, but I do not wish to appear sanctimonious to claim that my cause is more sacred than that of either black equality or of disabled people's rights.

5

I ask The Court's indulgence in my pro se litigant attempt to follow the rules, specifically that this FRCP 11 motion must be self-contained and not with any other motion. However, I note that implementation sometimes requires 21 days (noted below), and thus ask the Court's guidance and assurance that I will be granted an extension for my reply to all defendants' responses until some three weeks after the ESI is fully turned over, lest this make moot the production of ESI. As a computer professional, I assert that what I ask for can be done by the firms' Information Technology[6]

---

http://en.wikipedia.org/wiki/Tennessee_v._Lane
http://www.law.cornell.edu/supct/html/02-1667.ZD1.html
[6] I note that Littler is proud of their competence in that area, with Littler's Practice Areas include (and I quote):

> 'Complex Litigation and Jury Trials', Digital Workplace, eDiscovery, 'Policies, Procedures and Handbooks', 'Whistleblowing and Retaliation', 'Workplace Privacy and Data Security', and 'Employment Practices Audits'.
> http://www.littler.com/practice-areas

To use one example, Littler notes even their attorneys are not only skilled in ESI, but also "focus exclusively on eDiscovery and has at the ready, a team of attorneys dedicated full-time to managing eDiscovery nationwide ":

> " Very early, Littler recognized this trend and its importance to employers operating in a global workplace who were faced with an explosion of electronic data and emergent technologies. Littler pioneered the practice of hiring attorneys at the shareholder level to focus exclusively on eDiscovery and has at the ready, a team of attorneys dedicated full-time to managing eDiscovery nationwide. ...
> So not only does Littler's eDiscovery team assist in responding to discovery, but also we can advise clients about the best ways to secure responses from the other side. Thus, our eDiscovery lawyers have not only deep substantive knowledge in this constantly evolving area, but also the practical, hands-on experience that comes from litigating scores of cases in today's digital age."
> http://www.littler.com/practice-areas/ediscovery

Any one of these areas would have professionals skilled in making short work of the turning over of ESI (read: email), e.g. documents that contained the word "Lindner", which is sufficiently rare that it is unlikely that unrelated documents would be ensnared in the "Google" desktop search that has been routinely available for many years now for home and work use free of charge. I have the Google desktop search for years, but sadly Google discontinued support of this fine product. Littler clearly states they have more than adequate replacements in the form of special purpose litigation eDiscovery software, as noted on the same page:

> " State-of-the-Art Technologies
>
> In addition to its eDiscovery lawyers, Littler also employs a nationwide team of Litigation Support Specialists who leverage technology to streamline the collection, management, review, production and presentation of evidence, in a cost-effective yet powerful manner, using state-of-the-art eDiscovery technologies that have been rolled out firm-wide, including: Relativity®, a second-generation, evidence review and production application; LiveNote®, a real-time transcript reporting and enterprise transcript management application; TimeMap® timeline graphing tool; EMC Documentum eRoom® Web-based collaborative workspaces for distributed teams; and TrialDirector® trial presentation software.
>
> Littler has also built the Littler National Data Center that can perform an array of tasks associated with eDiscovery, including processing electronic evidence and hosting case databases. With this unique resource, Littler provides clients with a turn-key solution that typically is more cost-effective and streamlined than using outside vendors.
>
> Littler has preferred vendor relationships that our clients can leverage for specialized assistance in various aspects of eDiscovery including: harvesting electronic data; forensic analyses of electronic media; and managed "document review" (offering an alternative pricing approach to what can sometimes be the most costly aspect of large cases).

6

Department in a matter of hours, and perhaps by a computer professional such as I, in a matter of hours, subject to a clawback agreement, to which I am willing to agree. But I get ahead of myself.

I note that FRCP 11 does not apply to discovery:

" (d) INAPPLICABILITY TO DISCOVERY. This rule does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37."
http://www.law.cornell.edu/rules/frcp/rule_11

However, I am not asserting it for discovery, but for Ms. Woltz's prior negotiation on first a single delay where she agreed to ESI, and then her second delay. If she had a mental reservation that the ESI would never see the light of day, given that she would shut down this case prior to that point, Ms. Woltz should have informed me of that; I would not have agreed to a delay at all. And if indeed Ms. Woltz understood the plain language of the "ENDORSED ORDER," Ms. Woltz could have made the legal equivalent of a Presidential signing statement by limiting said ESI production contingent upon passing the Motion to Dismiss (which, by the way, I am not advocating such ex post facto reservations, since I feel that could have been contained in the actual document, much as Ms. Woltz carefully phrases her utterances today to include "if the facts were true, and I'm not conceding those facts"). Ms. Woltz can be precise when she wishes too, and it strikes me as inauthentic for Ms. Woltz to say it is (perhaps) non-existent to turn over ESI "without awaiting a discovery request"[7] prior to a Motion to

---

In short, Littler offers clients a full range of eDiscovery services to meet the needs of any case, from small, single-plaintiff administrative charges or internal investigations where only a handful of key custodians' emails are at issue, to trade secret matters where disputes over unique data sources are the central focus of the case, to bet-the-company, nationwide class or collective actions where hundreds of gigabytes and multiple types of electronic data are in play."

Littler's website also notes they have professional staff that includes these titles " Information Security, Information Technology, Knowledge Management,... Litigation Support, .... Paralegals, ..., Risk Management".

"Our professional staff play a key role in not only meeting but exceeding the needs and expectations of our attorneys and clients. Littler offers professional opportunities in the following areas:

- Accounting & Finance
- Administration
- Attorney Recruiting & Professional Development
- Human Resources
- Information Security
- Information Technology
- Knowledge Management
- Legal Secretaries
- Litigation Support
- Marketing
- Office Services
- Paralegals
- Projects & Product Management
- Real Estate
- Risk Management"

http://www.littler.com/careers/professional-staff

[7] From FRCP 26, which in context reads:

" RULE 26. DUTY TO DISCLOSE; GENERAL PROVISIONS GOVERNING DISCOVERY

(a) REQUIRED DISCLOSURES.

7

Dismiss. The ESI is not a lower bound on time (i.e. no earlier than a discovery request), but rather an upper bound as the **latest** time ESI must be addressed and which **can** be done in advance with the concurrence of the parties. I expressly requested that ESI, and Ms. Woltz in bad faith agreed to it, knowing her plan to not adhere to the ESI production while reaping the benefit of weeks of additional time to prepare a motion to gut my case.

I believe therefore that I have met FRCP 11's onerous burden of restricting this motion to solely the sanctions on Ms. Woltz and her Littler supervising Partner (the latter being the proximate cause for their filing delay, which I agreed to) and Littler's 3 Defendants, as stated in FRCP 11 "motion for sanctions must be made separately from any other motion":

> " (c) Sanctions.
> (1) *In General.* If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.
> (2) *Motion for Sanctions.* A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion."
> http://www.law.cornell.edu/rules/frcp/rule_11

And that I in this motion did "describe the specific conduct that allegedly violates Rule 11(b)", to wit, the negotiation in bad faith for the first and second delays, and for the conversation yesterday Thursday, July 19, 2012 in which Ms. Woltz sought to characterize ESI as never being given prior to a motion to dismiss, and then back-tracking.

Respectfully,

*[signature]*   8:33 am

_____   dated the 20th day of July 2012
Peter Lindner, Litigant Pro Se
1 Irving Place, Apt. G-23-C
NYC, NY 10003
Home/fax: 212-979-9647
Cell:        917-207-4962
Email:    nyc10003@nyc.rr.com

cc:
- Christopher B. Harwood, Assistant US Attorney (AUSA), via email Christopher.Harwood@usdoj.gov
- Ms. Wolz, Esq. of Littler Mendelson, via email jwoltz@littler.com

---

(1) *Initial Disclosure.*
   (A) *In General.* Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties... "
http://www.law.cornell.edu/rules/frcp/rule_26