UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
Peter Lindner,
:
                 Plaintiff,
:
  -against-
:
Court Security Officer (CSO) Newell,
*et al.*,
:
                 Defendants.
:
------------------------------------------------------------X

ORDER

11 Civ. 8365 (AJN)

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: MAR 2 6 2013
```

ALISON J. NATHAN, United States District Judge:

Plaintiff, Peter Lindner ("Lindner"), proceeding *pro se*, commenced this action on November 11, 2011, alleging that Court Security Officer ("CSO") Newell "assaulted" him in August of 2010, apologized to him in front of CSO Muschitiello, and that Newell and Muschitiello (collectively, the "CSO Defendants") proceeded to conspire with their employer, Akal Security, Inc. ("Akal") to destroy video tape evidence of this incident. (Docket # 1). Plaintiff further alleges that United States Marshall Service ("USMS") employees Joseph Guccione, James Howard, Brian Murphy, and Betty Ann Pascarella (collectively, the "Federal Defendants") also partook in this conspiracy.[1]

The CSO Defendants moved pursuant to Rule 12(b)(1) and Rule 12(b)(6) to dismiss the complaint on July 13, 2012. (Docket # 35). On July 16, 2013, the Federal Defendants also moved pursuant to Rule 12(b)(1) and 12(b)(6) to dismiss for lack of subject matter jurisdiction

---

[1] The complaint also named as defendants Margaret Lain, a "Deputy Clerk," and the United States Attorney for the Southern District of New York, Preet Bharara. (Docket # 1). Plaintiff's claims against those individuals were dismissed on February 15, 2012. (Docket # 13). Plaintiff's motion to reconsider that dismissal was denied on March 7, 2012. (Docket # 18).

1

and for failure to state a claim. (Docket # 38). For the reasons that follow, Defendants' motions are GRANTED in their entirety.

## I. FACTS

Plaintiff alleges that he was assaulted by CSO Newell while attending a Second Circuit proceeding related to an appeal of his employment discrimination case against IBM. (Docket # 1 at 5). Plaintiff alleges that this assault was "covered up by the USMS [along] with the CSO and" the CSO's employer, Akal. (*Id.*). Lindner alleges in his complaint that his injuries were "[n]othing major, but if it had been done to a woman, an elder person (I was about 60 at the time), or a lawyer or officer, it would have had the alleged perpetrator CSO Newell arrested." (*Id.* at 6).

Construed liberally, Plaintiff's complaint alleges violations of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.*, and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*"). Plaintiff also appears to allege that CSO Newell committed intentional torts actionable under New York law, including assault and battery. For the reasons discussed below, Plaintiff's FTCA claim against the United States is dismissed for lack of subject matter jurisdiction because Plaintiff failed to exhaust his administrative remedies. Plaintiff's *Bivens* actions are dismissed for failure to allege specific involvement of certain defendants in the alleged torts, and for failure to allege constitutional violations. And Plaintiff's common law tort claims are barred by New York's one-year statute of limitations for the intentional torts alleged in the complaint.

## II. DISCUSSION

A. <u>Plaintiff's Claims Against the Federal Defendants Are All Dismissed</u>

1. The Court Lacks Subject Matter Jurisdiction over Plaintiff's FTCA Claims

"The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transportation System, Inc.*, 426 F.3d 635, 638 (2005). On a 12(b)(1) motion, a district "court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings." *Flores v. S. Peru Copper Corp*, 414 F.3d 233, 255 n.30 (2d Cir. 2003) (quoting *Filetech S.A. v. France Telecom S.A.*, 157 F.3d 922, 932 (2d Cir. 1998)). Before reaching a legal conclusion regarding the existence of subject matter jurisdiction, "the district court should resolve the disputed factual matters by means of findings of fact." *Filetech*, 157 F.3d at 932; *see also* 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 ("[T]he district court, not a jury, must weigh the merits of what is presented on a Rule 12(b)(1) motion to dismiss, including resolving any issues of fact, and decide the question of subject matter jurisdiction.").

### i. Substitution of United States As Defendant

As a preliminary matter, under the FTCA, a claim "resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment" is to be brought as a suit against the United States. 28 U.S.C. § 2679(b)(1). The Government is liable for these tort claims "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Individual government employees, however, are immune from common-law tort claims arising from acts committed within the scope of their employment. *Castro v. United States*, 34 F.3d 106, 110 (2d Cir. 1994); *see also Rivera v. United States*, 928 F.2d 592, 608–09 (2d Cir. 1991).

Title 28, Section 2679(d)(1) provides that "[u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose," the United States "shall be substituted as the party

defendant." An express petition for certification is not required and a brief on behalf of named defendants may serve as a petition to certify that they were employees acting within the scope of their employment. *B & A Marine Co., Inc. v. Am. Foreign Shipping Co., Inc.*, 23 F.3d 709, 715–16 (2d Cir. 1994) ("[I]n the absence of a certification by the Attorney General, the statute permits the court to certify."). The Federal Defendants' brief seeks such certification. (Fed. Def. Br. at 7–8). Certification is appropriate in this case because the allegations in the complaint suggest only that the Federal Defendants were operating within the scope of their employment. The complaint alleges a "cover up" by "the US Marshal" who allegedly failed to conduct a proper investigation and to safeguard videotapes. (Complaint at 5). There are no allegations of the Federal Defendants behaving outside the scope of their federal employment. Consequently, the United States must be substituted in for all of the Federal Defendants for purposes of Plaintiff's FTCA claim.

      ii. Plaintiff Has Not Adequately Exhausted His Administrative Remedies

The Court lacks subject matter jurisdiction over FTCA claims if a plaintiff fails to adequately exhaust his administrative remedies with the appropriate federal agency prior to filing the FTCA complaint. *See* 28 U.S.C. § 2675(a); *Millares Guiraldes de Tineo v. United States*, 137 F.3d 717, 720 (1998) ("In sum, the United States has not consented to be sued on a tort claim unless the claim was first presented to the appropriate federal agency in writing, was so presented within two years after the claim accrued, and specified the amount of the claim in writing."). Because the administrative claim prerequisite is a jurisdictional requirement, it may not be waived. *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005).

Plaintiff asserts that prior to commencing this lawsuit, he submitted letters to various government agencies. (Opp. Br. at 5; Linder Aff. ¶¶ 41–42, 46–48, 51–53). For example, Plaintiff claims that on September 10, 2010, he delivered to the United States Attorney's Office ("USAO") a letter containing the following passage:

> **I hereby file my complaint to you about an Assault and Battery and intimidation** by (CSO) Court Security Officer Newel in front of the 2nd Circuit Court of Appeals, between 3:30pm and 5:15pm on Friday, Aug 20, 2010 on the 3rd floor of 500 Pearl St., while I was reporting a series of mail delayed to the 2nd Circuit . . . . I have been unable so far to file/report a criminal complaint done by a powerful person. I had also called the US Attorney civilian criminal complaint line the day after the incident, and have not been called back [*sic*].

(Docket # 50-1; Lindner Aff. ¶ 48) (emphasis in original).

Plaintiff further contends that on September 22, 2010, he sent a letter containing identical language to the Administrative Office of the US Courts, the US Marshals Service, and the FBI. (Docket # 50-1; Lindner Aff. ¶ 41). He asserts that on October 31, 2010, he served a FOIA request upon the USAO demanding videotapes of Officer Newell assaulting him. (Lindner FOIA Req. at 1-2, 4-6). And he alleges that on September 8, 2011, he sent a letter to the FBI stating that "[t]here was also later physical intimidation by the US Marshal's delegates, the Court Security Officer, which was allegedly caught on video tape at the SDNY Court House (4th?) floor but not turned over to my lawyer [*sic*]." (Docket # 50-1; Lindner Aff. ¶¶ 51–53).[2]

Assuming as true Plaintiff's contention that all of these letters were submitted to federal agencies, Plaintiff still failed to exhaust his administrative remedies prior to commencing the

---

[2] Plaintiff additionally alleges that he submitted letters to various agencies regarding alleged mistreatment by courthouse personnel during the course of his litigation against IBM. (Lindner Aff. ¶¶ 6–25, 29–31, 33–37). Many of these letters were sent prior to the assault at issue in this case, and all of them concern purported misconduct that occurred prior to the alleged 2010 assault, such as Plaintiff's allegations that another Judge in this district violated a criminal obstruction of justice statute. (*Id.*). These alleged letters are not pertinent to the question of whether Plaintiff exhausted his administrative remedies for purposes of the claims at issue in this case.

5

present action because his letters were all missing information that must be included before the administrative requirement can be fulfilled. "For purposes of the provisions of 28 U.S.C. 2401(b), 2672, and 2675, a claim shall be deemed to have been presented when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident, **accompanied by a claim for money damages in a sum certain** for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident." (emphasis added).

None of Plaintiff's alleged letters state "a claim for money damages in a sum certain." 28 C.F.R. § 14.2. Letters that do not contain a demand for a sum certain do "not constitute the filing of a formal administrative claim for FTCA purposes." *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 190 (2d Cir. 1999); *Liriano v. ICE/DHS*, 827 F. Supp. 2d 264, 269 n.3 (S.D.N.Y. 2011); *Rainwater v. United States*, 2010 WL 5248585, at *4 (S.D.N.Y. Dec. 15, 2010). This is because the purpose of requiring a statement of damages is to ensure that "the Notice of Claim provide[s] sufficient information both to permit an investigation and to estimate the claim's worth." *Keene Corp. v. United States*, 700 F.2d 836, 842 (2d Cir. 1983) ("It seems clear to us that a claim which includes 'an additional amount yet to be determined,' which may dwarf the sum stated, is a request for damages so indefinite as to fail to satisfy the statutory purpose. Faced with a reservation as to future damages which may entail huge sums, government officials cannot possibly evaluate the claim with a view to settlement."). Because the letters that Plaintiff allegedly submitted to various federal agencies did not include a claim for money damages stated in a sum certain, they did not constitute a formal administrative tort claim against the USMS.

Plaintiff is incorrect in construing the Federal Defendants' exhaustion argument as a complaint that his letters were presented in the wrong form or format. (Docket # 52; Pl. 9/21/12

6

Letter at 1–3). The problem is not with Plaintiff's letters' formatting, but instead with their content, in particular the absence of the required demand for a sum certain in money damages. Similarly unavailing is Plaintiff's argument that he satisfied the FTCA's exhaustion requirement by referring to the FTCA in his own notes, as saved on his computer hard drive. (*Id.* at 2; Docket # 53; Lindner 9/23 Aff. at 1–8). Plaintiff's own notes, stored on his computer, could not have put the relevant agencies on notice that a tort claim was being pursued against them or provided them with an opportunity to assess the possible monetary value of such a claim.

Finally, on July 16, 2012, the same day that the Federal Defendants filed their motion to dismiss, Plaintiff, apparently recognizing the deficiency in his previously submitted letters, filed a Form 95 with the USMS. (Docket # 57; Auerbach Suppl. Decl. ¶ 6). Plaintiff's July 16, 2012 Form 95 submission claimed damages in the amount of $3,500,000. (Docket # 57; Auerbach Suppl. Decl. Ex. A).[3] But the "FTCA requires that a claimant exhaust all administrative remedies *before* filing a complaint in federal district court." *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005) (emphasis added); *Barry v. SEC*, 2012 WL 760456, at *4 (E.D.N.Y. Mar. 7, 2012) (filing an administrative tort claim after an action has been commenced "cannot cure a premature complaint."). As a result, Plaintiff's July 16, 2012 letter does not cure the subject matter jurisdiction defect that existed when this action was commenced.

In sum, because Plaintiff failed to exhaust his administrative remedies prior to commencing the present action, the Court lacks subject matter jurisdiction to preside over his FTCA claim. Accordingly, Plaintiff's FTCA claim is dismissed without prejudice. If Plaintiff

---

[3] The Federal Defenders note certain deficiencies with Plaintiff's July 16, 2012 Form 95 (Auerbuch Suppl. Decl. Ex. B; Reply at 6 n.9), which are not pertinent to the Court's decision in this matter.

believes that, subsequent to the commencement of this lawsuit, he exhausted his administrative claims in a timely manner, and if he remains unsatisfied with the outcome of any administrative actions, he may re-file his FTCA claim.

2. Plaintiff's *Bivens* Claims Against the Federal Defendants Fail to State a Claim Upon Which Relief May Be Granted

Plaintiff also appears to assert a *Bivens* action against the Federal Defendants, which the Federal Defendants move to dismiss with prejudice for failure to state a claim. In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in favor of the non-moving party. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Because Plaintiff is proceeding *pro se*, his submission is construed liberally "to raise the strongest arguments that it suggests." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010)).

"A plaintiff bringing a claim under *Bivens* must allege that he has been deprived of a constitutional right by a federal agent acting under color of federal authority." *Thomas v.*

8

*Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006) (citing *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 403 U.S. 388, 389 (1971)). As discussed below, Plaintiff has not adequately alleged personal involvement by any of the Federal Defendants in a violation of his constitutional rights. Moreover, the complaint's general and vague allegations against unspecified Federal Defendants fail to state a claim for a constitutional violation.

      i.    Plaintiff May Not Bring a *Bivens* Action Against Officers Acting in Their Official Capacity

As an initial matter, Plaintiff may not bring a *Bivens* claim against Defendants in their official capacity. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) ("Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived."). The United States "has not consented to be sued on claims brought under *Bivens.*" *Id.* Thus, to the extent that Plaintiff brings this action against Defendants in their official capacity, his claims must be dismissed with prejudice.

      ii.    Plaintiff Fails to State a Claim Against the Defendants in their Individual Capacity

          a.    Plaintiff Fails to State a Claim Against Marshal Guccione

With respect to Federal Defendant Guccione, Plaintiff's complaint pleads only conclusory assertions regarding the August 20, 2010 incident. Specifically, the complaint alleges that "the US Marshal" (i.e. Defendant Guccione) engaged in a "cover[] up" of the alleged assault. (Docket # 1 at 5). In his opposition papers, Plaintiff further alleges that Federal Defendant Guccione:

9

> [P]robably in violation of US DOJ . . . guidelines violated 2 separate rules: (a) Turning an incriminating letter from a whistleblower / informant [me, Peter Lindner] over to the possible lawbreaking Judge, USDJ Sullivan; (b) Asking for permission from the US DOJ for possibly investigating a high-profile, important government official [to wit: USDJ Sullivan] prior to acting on any complaint.

(Docket # 50 at 10; Aff. of Peter Lindner in Opp. ¶ 12).

First, the allegations regarding information being turned over to Judge Sullivan appear entirely unrelated to the August 20, 2010 incident in the Second Circuit courthouse that is the basis for this action. Furthermore, Plaintiff's claims of a "lawbreaking Judge" are conclusory and totally unsupported by anything in the record. Additionally, the allegations that Defendant Guccione improperly asked for permission prior to conducting an investigation is also conclusory and unsupported by factual assertions.

To the extent that both sets of allegations against Defendant Gucione are related to an alleged general failure on Defendant Guccione's part to conduct an investigation of Judge Sullivan as Plaintiff would have wanted, Plaintiff fails to state a valid constitutional violation actionable under *Bivens* because the authority known to the Court holds that "[t]here is . . . no constitutional right to an investigation by government officials." *Stone v. Dep't of Investigation of City of N.Y.*, 1992 WL 25202, at *2 (S.D.N.Y. Feb. 4, 1992); *see also Walker v. City of New York*, 2010 WL 5186779, at *5 (E.D.N.Y. Dec. 15, 2010) (same); *cf. Bender v. City of New York*, 2011 WL 4344203, at *10 (S.D.N.Y. Sept. 14, 2011). Moreover, even assuming *arguendo* that

such a right does exist, it is not a clearly established one and Defendant Gucione therefore is entitled to qualified immunity. *Groh v. Ramirez*, 540 U.S. 551, 563 (2004).[4]

                              b. Plaintiff Fails to Allege Individual Involvement by Any Other Federal Defendant

The remaining Federal Defendants—Howard, Murphy, and Pascarella—are not mentioned by name in the body of the complaint. For this reason alone, the claims against these three individuals should be dismissed for failure to allege personal involvement with a constitutional violation. *See, e.g., Thomas*, 470 F.3d at 497 (Plaintiff in a *Bivens* action "must allege that the individual defendant was personally involved in the constitutional violation."); *see also Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009) (*en banc*). Plaintiff does mention some of these Defendants by name in his numerous other filings in this case, but "[i]t is the complaint's allegations and not vague assertions in briefing papers that must be able to withstand a motion to dismiss." *In re Britannia Bulk Holdings Inc. Sec. Litig.*, 665 F. Supp. 2d 404, 416 n.8 (S.D.N.Y. 2009).

Plaintiff's allegations outside of the pleading are relevant only to the Court's consideration of whether to grant Plaintiff leave to amend. To that end, Plaintiff mentions in his purported FOIA request that "USM Howard" instructed Plaintiff to direct communications to the Second Circuit Court of Appeals through Defendant Howard. (Docket # 50-3; FOIA Request at 6–7). Assuming as true that Defendant Howard instructed Plaintiff on the proper way to

---

[4] Plaintiff does not allege that Defendant Guccione created or assumed responsibility for a policy that contributed to a constitutional violation. *Mallard v. Menifee*, 2000 WL 557262, at *3 (S.D.N.Y. May 8, 2000) ("[T]o be liable under *Bivens*, a defendant must either be personally involved in the violation of plaintiff's rights, or must have created or acquiesced in a policy or practice of poor training or supervision, or otherwise must have acted recklessly in managing his or her subordinates.").

11

communicate with the Court of Appeals, such instruction by no means demonstrates tortious misconduct.

Plaintiff also alleges in a separately filed "Affidavit" that Defendant Pascarella "would neither confirm nor deny that a tape" of the incident existed. (Docket # 60 at 3). Plaintiff alleges later in the affidavit that Pascarella did see a videotape. (*Id.* at 7). Finally, Plaintiff alleges that "perhaps" Defendant Pascarella interviewed Defendant Newell. (*Id.* at 10). None of these allegations state a claim for a constitutional violation or any other tort.

In short, Plaintiff's claims against Defendants Howard, Murphy, and Pascarella are dismissed for failure to allege that they were personally involved in any violation of Plaintiff's constitutional rights.

      c. Plaintiff Fails to Allege Any Violation of His Constitutional Rights By Unspecified Federal Defendants

Moreover, in addition to Plaintiff's failure to allege specific actions by any of the Federal Defendants rising to the level of a constitutional violation, his general allegations against unnamed USMS employees also fail to state a claim upon which relief may be granted.

Plaintiff alleges broadly and vaguely that "the US Marshal" partook in a conspiracy with CSOs and Akal to "cover[] up" Newell's alleged assault of Plaintiff, and that "the US Marshal Investigator" failed to "properly conduct the cross-examination" of witnesses in connection with alleged assault, in addition to failing to "safeguard" videotapes of the alleged assault. (Docket # 1 at 5).

With regards to Plaintiff's conspiracy allegations, he fails to plead an essential element of a *Bivens* conspiracy claim: a meeting of the minds. *Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009) ("Broad allegations of conspiracy are insufficient; the plaintiff must provide some factual

12

basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end."); *see also Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("It is well settled that claims of conspiracy containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.") (internal quotation marks omitted). Because Plaintiff's vague and general conspiracy allegations fail to plead a plausible meeting of the minds, it must be dismissed.

To the extent that Plaintiff alleges a violation of his rights through a failure to safeguard evidence, such allegations may state a claim for violations of Plaintiff's access to the Courts. *Mazloum v. Dist. of Columbia*, 442 F. Supp. 2d 1, 7 (D.D.C. 2006). However, such a claim is only cognizable if the defendants acted "deliberately and maliciously." *Smith v. O'Connor*, 901 F. Supp. 644, 649 (S.D.N.Y. 1995). But Plaintiff's allegations do not create a plausible inference of deliberate and malicious misconduct on the part of the Federal Defendants. Plaintiff's allegations that the Federal Defendants failed to "safeguard" a videotape is, at best, a claim for negligence, which cannot support a due process claim. *Shannon v. Jacobowitz*, 394 F.3d 90, 94–95 (2d Cir. 2005) (allegedly negligent conduct does not create an actionable due process deprivation)

Plaintiff asserts in his opposition papers that his allegations regarding destruction of the videotape stem from a comment by USM employee Paul Brunhuber ("Brunhuber")—who is not named as a defendant in this action—to Plaintiff that he "would allow . . . videotapes to be written over." (Docket # 50; Opp. Br. at 11). But Plaintiff's allegations that Brunhuber told him that he would allow some unspecified videotapes to be written over for some unspecified reason fails to state a claim that a specific videotape was intentionally written over or otherwise destroyed.

13

Moreover, Plaintiff has indicated in filings submitted in this matter that he is not even sure if a videotape ever existed. (*See* Dkt. # 9 at 2) ("[T]here may be footage on video of [Newell's] actions where I alleged that CSO Newel did assault me with his name plate [*sic*]."). In a subsequent filing, Plaintiff alleges that the US Marshals told his former attorney that "no such videotape" exists, and then conclusorily alleges that this information was false. (Dkt. # 19 at 3). Finally, in his opposition brief, Plaintiff states that he has "surmised" that it is the "Modus Operandi" of the USMS "to destroy videos." (Docket # 50; Opp. Br. at 11). Plaintiff's expressions of uncertainty over whether a videotape of the alleged assault ever existed detract from the plausibility of his allegations that such a videotape was destroyed, and that the destruction was part of an intentional conspiracy.

In sum, Plaintiff's general allegations regarding USM employees and other Federal Defendants' alleged violations of his constitutional rights fail to state a claim upon which relief can be granted.

### B. Plaintiff Fails to State a Claim Against the CSO Defendants

#### 1. Plaintiff May Not Bring a *Bivens* or FTCA Action Against Akal

A *Bivens* action may not be brought against private entities operating under the color of federal law. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). As a result, Plaintiff's *Bivens* action against Akal must be dismissed.

Additionally, Plaintiff may not bring a FTCA claim against Akal. The FTCA, by its own terms, only provides a cause of action against the United States. 28 U.S.C. § 2679(b)(1); *see also Banks v. United States*, 2011 WL 4100454, at *12 (S.D.N.Y. Sept. 15, 2011) ("The only proper defendant, however, in an FTCA action is the United States."). Thus, Plaintiff's purported FTCA action against Akal must be dismissed.

14

2.      Plaintiff Fails to State a *Bivens* Violation Against the CSO Defendants

The CSO Defendants, whom the complaint makes clear were employees of a private company contracted by the federal government, (Docket # 1 at 1, 5), argue that Plaintiff is unable to bring a *Bivens* cause of action against them in light of the Supreme Court's decision in *Minneci v. Pollard*, 132 S. Ct. 617 (2012). However, the Court need not reach the question of whether, under *Minneci*, New York's common law remedies preclude Plaintiff from bringing a *Bivens* action against the CSOs in this case, because the Court concludes that, assuming all of Plaintiff's allegations as true, he has failed to state a constitutional violation and therefore has failed to state a *Bivens* action even if one does exist.

With regard to Plaintiff's allegations that the CSOs conspired with the USMS employees to commit a due process violation involving destruction of evidence and denial of Plaintiff's access to the courts, the complaint's allegations, as discussed in "II.A.2.ii.C" above, fail to adequately state a claim for any due process violation or related conspiracy. Specifically, Plaintiff has failed to allege that there was a meeting of the minds between the alleged conspirators and failed to plausibly allege that the Defendants intentionally or maliciously destroyed any evidence.

To the extent that Plaintiff alleges an excessive force claim against the CSO Defendants, his claim fails because he has not alleged sufficiently serious force or injury. The Supreme Court has held that courts should review excessive force claims under an "objective reasonableness" standard. *See Graham v. Connor*, 490 U.S. 386, 388 (1989). Courts in this district have dismissed actions for excessive force that fail to allege more than a de minimis use of force. *Liriano v. ICE/DHS*, 827 F. Supp. 2d 264, 271 (S.D.N.Y. 2011) ("Plaintiffs' allegation that the officers pushed Liriano against the wall likewise fails to present an actionable

constitutional claim because it does not suggest a level of force that is more than de minimis."); *Wims v. N.Y. City Police Dept.*, 2011 WL 2946369, at *4–5 (S.D.N.Y. July 20, 2011) (citing cases) (motion to dismiss excessive force claim granted where plaintiff claimed that officers physically brutalized him and threw him face first on to the ground; level of force *de minimis* because, among other things, plaintiff identified no specific or identifiable injury as a result of force); *Rincon v. City of New York*, 2005 WL 646080, at *5 (S.D.N.Y. Mar. 21, 2005) (rejecting § 1983 excessive force claim where plaintiff alleged that the officer threw her to the ground, causing her stitches to open and was treated for a swollen leg and wrist, because the force was de minimis). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (internal citation and quotation marks omitted).

In this case, Plaintiff's allegations do not amount to either serious force or a serious injury. Plaintiff alleges in his complaint that the injuries he allegedly suffered were "[n]othing major." (Docket # 1 at 6). Regarding force, in his purported FOIA request, Plaintiff states "I was physically intimidated and then touched on the face by the Court Security Officer's badge when I asked to see his name." (Docket # 50-3 at 1). Plaintiff elaborates on his allegations in a separate submission to the Court titled "Plaintiff's Motion Requesting Full Hearing," in which Plaintiff wrote, "I can assure you that CSO Newell struck my head with his name plate on the floor of the 2nd Circuit Court of Appeals at 500 Pearl Street and that your alleged colleague / employee / Assistant US Marshal informed me that Newell denied hitting me with his nameplate. . . . Now, I said I was assaulted with the CSO's nameplate as he was holding it up inches from my eyes . . . . But I know for a fact that I was assaulted by CSO Newell and that he apologized for not giving me his name, and when I said that's not why I'm angry at you, he apologized a

second time in front of CSO Muschitiello for hitting me in the head with the name plate." (Docket # 64 at 15).

Given the sparse and conclusory nature of Plaintiff's allegation that he was "assaulted," coupled with his concession that any resulting injuries were "nothing major," the Court concludes that he has failed to plausibly allege an excessive force claim.

As a result, Plaintiff's *Bivens* claims against the individual CSOs are dismissed.

### 3. Plaintiff's Common Law Causes of Action Are Time-Barred

Plaintiff's claims for assault and battery are barred by New York's one-year statute of limitations. N.Y. C.P.L.R. § 215(3). Plaintiff alleges that the events involving CSOs Newell and Muschitiello occurred in August of 2010 (Compl. at 3), but the present lawsuit was not commenced until November 16, 2011. As a result, the assault and battery claims are time barred.

With regards to Plaintiff's civil conspiracy claim, under New York law, which "does not recognize an independent tort of civil conspiracy," such a cause of action is "available only if there is evidence of an underlying actionable tort." *Baker v. R.T. Vanderbilt Co.*, 688 N.Y.S.2d 726, 729 (App. Div. 1999). As a result, the statute of limitations for civil conspiracy "is the same as that for the underlying tort." *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 560 (E.D.N.Y. 2011) (citing *Brady v. Lynes*, 2008 WL 2276518, at *9 (S.D.N.Y. June 2, 2008)). Thus, Plaintiff's civil conspiracy claim is also time barred.

Plaintiff is incorrect in arguing that he satisfied the statute of limitations through the letters that he alleges that he submitted to federal agencies in 2010. As an initial matter, there is no indication that those letters ever reached Akal or the CSOs and put them on notice of a claim. Moreover, and more to the point, "[t]he time within which an action must be commenced is computed from the time the cause of action accrued to the time the claim is interposed." New

17

York Civil Procedure Law and Rules § 203(a); *Flatlands Acupuncture, P.C. v. Fireman's Fund Ins. Co.*, 927 N.Y.S.2d 281, 282 (N.Y. 2011). In an action "which commenced by service," a claim is "interposed" when either (1) the summons is served upon the defendant, (2) a summons is published pursuant to an order, (3) an order for a provisional remedy other than attachment is granted, (4) upon the granting of an attachment in certain specified circumstances, or (5) under certain circumstance, when the summons is delivered to a sheriff or filed with the county clerk. New York Civil Procedure Law and Rules §203(b). In this case, the complaint was not filed until November 16, 2011, over a year after the alleged torts took place. The Court sees no evidence indicating that prior to November 16, 2011, Plaintiff obtained any provisional remedies, published a summons pursuant to a court order or delivered a summons to a sheriff's office or the county clerk. As a result, Plaintiff's common law claims are time barred.

    C.   Plaintiff's Claims Against Congressional Affairs Chief D. Disrud and "S. Jones" Are Dismissed

Plaintiff also names as defendants Congressional Affairs Chief "D. Disrud" and "S. Jones." (Docket # 1 at 1). The docket sheet indicates that Disrud was never served. (Docket # 42). Plaintiff's claims against Disrud are dismissed, both for failure to serve Disrud within 120 days of the issuance of a summons and for failure to articulate any allegations against Disrud in the complaint. *Armstrong v. Sears*, 33 F.3d 182, 186 (2d Cir. 1994) ("It is clear that the individual defendants must be served in a *Bivens* case in accordance with Rule 4(e)."). The claims against S. Jones are also dismissed for failure to specify in the complaint any allegations regarding S. Jones.

**III.**    **PLAINTIFF IS NOT GRANTED LEAVE TO REPLEAD**

A *pro se* litigant should be afforded an opportunity to replead his claim if a liberal reading of the complaint indicates that a valid claim might be stated. *See Cuoco v. Moritsuqu*, 222 F.3d 99, 112 (2d Cir. 2000). However, leave to amend may be "denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 555 F.3d 122, 126 (2d Cir. 2008). Moreover, a litigious plaintiff "who is quite familiar with the legal system and with pleading requirements," may not be afforded the special solicitude normally afforded *pro se* litigants. *Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994) (declining to afford an "extremely litigious inmate" the benefit of lenient treatment normally afforded *pro se* litigants and thus denying the plaintiff the opportunity to amend a claim where he failed to properly plead a cause of action).

Plaintiff is an experienced litigator, having brought six actions (including the present one) in this district, four of which were commenced in the past two and one-half years. *See Lindner v. Blit*, No. 12-CV-2734 (S.D.N.Y. 2012); *Lindner v. American Express Co.*, No. 10-CV-2267 (S.D.N.Y. 2010); *Lindner v. American Express Co.*, No. 10-CV-2228 (S.D.N.Y. 2010); *Lindner v. American Express Corp., et al.*, No. 06-CV-3834 (S.D.N.Y. 2006), *Lindner v. IBM*, No. 06-CV-4751 (S.D.N.Y. 2006). Plaintiff represented himself *pro se* for the entire duration of four of these actions and for parts of the other two.

Moreover, the Court concludes that any attempt by Plaintiff to amend his complaint would be futile. Plaintiff has indicated that he does not even know if a videotape ever existed, indicating that he cannot plausibly allege that Defendants conspired to destroy a videotape in violation of his constitutional rights. His state law claims are all time barred. His injuries are insufficient to state an excessive force claim. And Plaintiff may not bring a FTCA or a *Bivens*

action against Akal, a private company. Finally, with regards to Plaintiff's FTCA claim against the United States, no amendment could cure the subject matter jurisdiction defect that existed when this action was commenced.

Given Plaintiff's litigation experience and the futility of any attempt to replead, Plaintiff is not granted leave to amend his complaint.

## CONCLUSION

For the foregoing reasons, Plaintiff's FTCA claim against the United States is DISMISSED without prejudice. All of Plaintiff's other claims are DISMISSED with prejudice. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). All pending motions are denied as moot and the Clerk of Court is requested to close this case.

SO ORDERED:

_____
ALISON J. NATHAN
United States District Judge

Dated: March 26, 2013
New York, New York

Copy mailed to Pro se Party on 3/26/13

20